UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL VINCENT,

              Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

           Defendant.

CASE NO. 11cv5191-RBL-JRC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

NOTING DATE: February 24, 2012

      This matter has been referred to United States Magistrate Judge J. Richard
Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR
4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261,
271-72 (1976).  This matter has been fully briefed. (<u>See</u> ECF Nos. 19, 20, 21).

      The ALJ did not consider properly all of plaintiff's functional limitations, such as
his need for frequent restroom breaks. The ALJ also credited her own interpretation of
the medical evidence over that of the doctors and erred in her consideration of plaintiff's

testimony as well as the lay testimony. Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff, PAUL VINCENT, was born in 1968 and was thirty-eight years old on his alleged onset date of March 23, 2007 (Tr. 165, 632). Plaintiff has the severe impairments of Crohn's disease, depression and anxiety (see Tr. 23). Plaintiff had two bowel resections between 1992 and 2005 before his alleged onset date of disability, including sections of both his small and large intestines (Tr. 260, 262, 508). Plaintiff reports losing jobs as a result of his impairments (see, e.g., Tr. 338; see also Opening Brief, ECF No. 19, p. 1). For example, on March 15, 2007, plaintiff's employer concluded that plaintiff's "current medical condition" prevented him from performing "the essential functions" of his job and that he would be separated from his employment (Tr. 250).

Plaintiff has alleged that part of the problem that he has had with employability results from his need "to go to the bathroom sometimes 15-20 times in 24 hours and . . . . he cannot function for more than 2-3 hours without having to go to the restroom" (Tr. 338; see also Tr. 26). Plaintiff testified that he would take up to 20 minutes for each bathroom break (Tr. 51). Plaintiff's need for frequent access to the restroom is one of the alleged functional limitations that plaintiff contends is dispositive regarding the issue of his disability in this matter (see Opening Brief, ECF No. 19, pp. 21-24). In her written decision, the ALJ found that plaintiff's assertion regarding frequent bathroom breaks was

not supported by the record (Tr. 26) and that the opinions of the state agency physicians that plaintiff required such frequent bathroom breaks was "inconsistent with treatment records, which do not show such reports by the claimant" (Tr. 29).

On November 13, 2006, Dr. Khanh Dinh Nguyen, M.D. ("Dr. Nguyen") assessed that plaintiff was suffering from a flare-up of inflammatory bowel disease (Tr. 299). He opined that plaintiff was not able to work at that time, and recommended that plaintiff be released from work for a week (id.).

On January 2, 2007, Dr. Nguyen noted plaintiff's report that "over recent month patient has had more physical pain discomfort and exhaustion [and] has been through multiple rounds of infections and also surgery" (Tr. 296). He indicated in the subjective portion of the report that plaintiff was "unable to function for most days due to pain and discomfort and fatigue" (id.). Dr. Nguyen also indicated his opinion that plaintiff suffered from chronic abdominal pain secondary to inflammatory bowel disease (Tr. 296). Dr. Nguyen indicated his assessment that due to plaintiff's ongoing chronic medical issues, that plaintiff was physically exhausted, running down mentally and having a "very hard time functioning from day-to-day given pain discomfort of his ongoing inflammatory bowel disease" (Tr. 296-97). He indicated his plan that plaintiff modify his work schedule and work for "four hours per day for the next three months" (Tr. 297). His plan included a reassessment of plaintiff's condition in three months, to see if he was able to tolerate working six hours per shift (see id,).

Dr. Nguyen also evaluated plaintiff on January 30, 2007 (Tr. 293-95). At this time, Dr. Nguyen assessed that plaintiff was experiencing a mild flare up of his chronic abdominal pain and his irritable bowel disease (Tr. 294).

On March 15, 2007, plaintiff's employer sent him an "intent to separate from employment" (Tr. 250). The letter indicates that plaintiff's employer concluded that his "current medical condition" prevented him from performing "the essential functions" of his job (id.). Based on plaintiff's failure to comply with an accommodation to a part-time schedule and based on his "inability to maintain regular, reliable and predictable attendance," plaintiff was told that he would lose his job (see id.).

On November 16, 2007, plaintiff was seen by Dr. Nguyen for a finger injury as well as ongoing chronic abdominal discomfort and pain, and inflammatory bowel disease, which was affecting his energy, ability to focus, and anxiety level (Tr. 272). Plaintiff reported that although he was trying to work, he was having a "very hard time" (id.). Plaintiff's anxiety medication reportedly either was causing plaintiff to suffer from too many adverse side effects at higher doses or was not efficacious at lower doses (Tr. 272, 273).

Dr. Nguyen assessed that plaintiff was suffering from "chronic abdominal pain/inflammatory bowel disease" that was creating difficulties for plaintiff regarding his day-to-day function "now daily" (Tr. 272). Dr. Nguyen advised plaintiff to continue his dietary health practices and his medications, including oxycodone-acetaminophen; paroxetine HCL; cholestyramine; mycolog II; lunesta; and, pepcid, with an adjusted dose of his anxiety medications (Tr. 272-73).

On February 19, 2008, Dr. Myrna Palasi M.D. ("Dr. Palasi"), a non-examining Washington State Agency physician, assessed plaintiff's ability to function based on a review of plaintiff's record (see Tr. 328-35). Dr. Palasi opined that due to "Crohn's, clmt will need frequent bathroom breaks" (Tr. 329).

On September 24, 2008, plaintiff was seen by Nurse Practitioner Betty White, ARNP ("Nurse Practitioner White ") (Tr. 528). Nurse Practitioner White indicated that plaintiff was "still having right upper quadrant pain" and was obtaining pain management through his primary care physician (id.). According to the treatment record plaintiff's wife stated that plaintiff "dropped a bowl and passed out from a significant sharp pain" (id.). Nurse Practitioner White indicated an assessment of Crohn's disease with multiple resections and ordered tests (id.).

On October 14, 2008, Nurse Practitioner White again assessed plaintiff for his severe pain (Tr. 524). Nurse Practitioner White indicated that she spent time on patient education and counseling, including having with plaintiff a "long term discussion regarding diarrhea, status post cholecystectomy along with his Crohn's disease" (id.). She assessed that plaintiff was suffering from right "upper quadrant pain consistent with biliary dyskinesia with abnormal ejection fraction of the gallbladder on HIDA scan completed 09/30/08" (id.). He was scheduled for cholectomy surgery for the following day (id.).

On February 10, 2009, plaintiff was seen by Nurse Practitioner White after his gall bladder surgery, suffering from "increasing right upper quadrant discomfort" (Tr. 520). Nurse Practitioner White noted that plaintiff "had some more diarrhea which was

expected with the cholecystectomy, but he now has these abdominal lesions that are opening" (id.). She indicated her diagnostic impressions of "Crohn's disease, status post a couple of resections by Dr. Gordon Klatt;" and, "Recent cholecystectomy now with increasing symptoms again with the right upper quadrant pain with significant adhesions seen on recent surgical evaluation" (Tr. 521). Nurse Practitioner White ordered more tests and scans and indicated a plan that plaintiff "may require more aggressive Crohn's treatment at this time" (Tr. 522).

On June 15, 2009, Dr. William H. Holderman, M.D. ("Dr. Holderman") evaluated plaintiff due to plaintiff's concerns regarding plaintiff's diarrhea (Tr. 508-10). According to the treatment notes, plaintiff had "been concerned that the diarrhea which goes up to 18 times per day leaves him to be quite tired, fatigued, and felling unwell" (Tr. 509).Dr. Holderman indicated his diagnostic impression that plaintiff was suffering from "Fluctuating diarrhea and urgency with a known history of cholecystectomy and segmental resection of Crohn's ileitis" (id.). Dr. Holderman commented that plaintiff had a "fluctuating pattern," with apparent worsening symptoms (id.).

On June 22, 2009 plaintiff went to a clinic with right sided weakness, slurred speech and an unsteady gait (Tr. 460). Plaintiff was discharged with a diagnosis of Bell's Palsy (see Tr. 480, 496). On a follow-up examination, Dr. Nguyen noted that plaintiff possibly had a seizure while at the emergency room for Bell's Palsy symptoms (Tr. 454). Dr. Nguyen also noted plaintiff's complaint of "ongoing chronic abdominal pain," and indicated that plaintiff's "severe pain" was interfering with plaintiff's attempts to exercise (Tr. 454, 455). Dr. Nguyen indicated his assessment of chronic abdominal pain noting

"ongoing severe abdominal pain, inflammatory bowel disease has had multiple surgeries with ongoing chronic pain and flare-ups" (Tr. 455). Dr. Nguyen indicated his plan that plaintiff continue with his medications and Dr. Nguyen opined that plaintiff was "very limited in terms [of] what he can do given ongoing severity of pain" (id.).

On July 23, 2009, plaintiff was seen by Nurse Practitioner White with complaints of "more diarrhea again" (Tr. 506). The treatment notes indicate that plaintiff thought that he was having a recurrent stricture, although Nurse Practitioner White assessed that "W[w]e have not yet seen any evidence of this on endoscopy or radiology" (id.).

On August 5 and September 4, 2009, plaintiff was evaluated by Dr. Yu Zhu, M.D., Ph.D. for possible seizure (Tr. 588-90). These treatment notes indicate plaintiff's report of approximately twelve recent episodes of losing consciousness, including episodes of fecal incontinence (Tr. 589). During the earlier occasions, plaintiff reported getting more warning than in August, 2009 (id.). In September, 2009, plaintiff reported losing consciousness every ten days (Tr. 588).

On November 6, 2009, plaintiff had a capsule endoscopy (Tr. 604-05). Mr. Garrick D. Brown, M.D. ("Dr. Brown") assessed that plaintiff had a segment of the small bowel "where normal villous pattern seem[ed] to have been lost without other obvious inflammatory changes (Tr. 605). He noted his observation that approximately twenty percent into the small bowel, plaintiff may have had "some small nonbleeding erosions," as well (Tr. 604). Dr. Brown recommended consideration of celiac antibodies and also consideration of "push enteroscopy of the small bowel for further diagnostic information if indicated" (Tr. 605).

On December 22, 2009, plaintiff was seen by Nurse Practitioner White for his recurrent abdominal pain (Tr. 601-03). She noted his "sometimes sharp" abdominal pain and that he was continuing to have runny stools about two to three a day (Tr. 602). Nurse Practitioner White indicated that plaintiff was "status post ileal resection now with some urgency" (id.). However, she also indicated that medication helped such that plaintiff did "not have to worry about incontinence" (id.).

PROCEDURAL HISTORY

Plaintiff filed applications for supplemental security and disability income benefits in December, 2007 (Tr. 165-69, 170-74). His applications were denied initially and following reconsideration (Tr. 94-97, 98-101, 112-14, 120-22). Plaintiff's requested hearing was held before Administrative Law Judge Laura Valente ("the ALJ") on November 12, 2009 (Tr. 625-94). On January 27, 2010, the ALJ issued a written decision in which she found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 18-31). On January 28, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981.

On March 10, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF No. 1). On May 17, 2011, defendant filed the sealed administrative transcript regarding this matter ("Tr.") and on September 1, 2011, defendant filed a supplement to the administrative record, including the complete hearing transcript (see ECF Nos. 9, 17). In his Opening Brief, plaintiff challenges the ALJ's evaluation of: (1) the medical evidence; (2) the lay evidence; and (3) plaintiff's

credibility and testimony (ECF No. 19, pp. 20-21). Plaintiff also contends that plaintiff's impairments and symptoms met or equaled Listings 5.06 and 12.04 and that the ALJ relied on an improper hypothetical to the vocational expert (id.).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quoting Davis v.

_Heckler_, 868 F.2d 323, 325-26 (9th Cir. 1989)); <u>see also Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (1996) (per curiam) (_quoting_ <u>Andrews</u>, <u>supra</u>, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" <u>See</u> <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2006) (_citing_ <u>Moore v. Comm'r of the Soc. Sec. Admin.,</u> 278 F.3d 920, 924 (9th Cir. 2002)); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not _post hoc_ rationalizations that attempt to intuit what the adjudicator may have been thinking." <u>Bray v. Comm'r of SSA</u>, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (_citing_ <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947) (other citation omitted)); <u>see also</u> <u>Stout v. Commissioner of Soc. Sec.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." <u>Stout</u>, <u>supra</u>, 454 F.3d at 1054 (_citing_ <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be

considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

DISCUSSION

1. The ALJ erred in her review of plaintiff's credibility.

In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, supra, 157 F.3d at 722 (citations omitted); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, supra, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, supra, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* <u>Cotton</u>, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1283-84; <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722 (*citing* <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996); <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

Many of the challenged opinions and evidence involve the need for frequent bathroom breaks and close access to a restroom. When discussing plaintiff's testimony, the ALJ indicated that plaintiff's "testimony of recurring incontinence and need for frequent bathroom breaks is not supported treatment records (sic)" (Tr. 26). In support of this conclusion by the ALJ, the ALJ cited normal ultrasound and CT scans in 2008 and 2009 (<u>id.</u>). The ALJ also found that there "is only sporadic mention of abdominal pain and diarrhea" (<u>id.</u> (*citing* Tr. 506, 508, 509)). The ALJ supported this finding with a treatment note in which plaintiff reported "to Dr. Holderman that he did not have significant diarrhea" (Tr. 26 (*citing* Tr. 512)).

The ALJ's review of the evidence does not reflect accurately the record regarding plaintiff's relevant symptoms and limitations. Although it is true that plaintiff reported to Nurse Practitioner White that he did not have significant diarrhea on March 12, 2009, it also is true that plaintiff reported significant issues with diarrhea at examinations both before and after this March 12, 2009 examination (<u>see</u> Tr. 508-10, 520). For example, on February 10, 2009, after his gall bladder surgery, Nurse Practitioner White noted that

plaintiff "had some more diarrhea which was expected with the cholecystectomy" (Tr. 520).

On June 15, 2009, at plaintiff's next appointment after the reference cited by the ALJ, Dr. Holderman evaluated plaintiff because plaintiff had "been concerned that the diarrhea which goes up to 18 times per day leaves him to be quite tired, fatigued, and felling unwell" (Tr. 509). Dr. Holderman indicated his diagnostic impression at that time that plaintiff was suffering from "Fluctuating diarrhea and urgency with a known history of cholecystectomy and segmental resection of Crohn's ileitis" (id.). Dr. Holderman commented that plaintiff had a "fluctuating pattern," with apparent worsening symptoms (id.). Additional relevant references include Nurse Practitioner White's indication on July 23, 2009 that plaintiff had complaints of "more diarrhea again" (Tr. 506) and her evaluation of plaintiff for his recurrent abdominal pain on December 22, 2009, when she noted his "sometimes sharp" abdominal pain and that he was continuing to have runny stools about two to three a day (Tr. 602).

That plaintiff was complaining regularly regarding abdominal pain, diarrhea and urgency is evidenced by the medical evidence, some of which was reviewed previously by the Court, see supra, BACKGROUND section. Although on one occasion in March, 2009, plaintiff did not report experiencing diarrhea, plaintiff had a "fluctuating pattern," with apparent worsening symptoms, as noted by Dr. Holderman on June 15, 2009 (Tr. 509).

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ's findings that there "is only sporadic mention of abdominal pain and

diarrhea" in the record and that plaintiff's "need for frequent bathroom breaks is not supported [by] treatment records" are not findings that are supported by substantial evidence in the record as a whole (Tr. 26). See Magallanes, supra, 881 F.2d at 750.

This finding is buttressed by a review of the new evidence (see, e.g., Tr. 5, 622-24). The Court may review new evidence when determining whether or not "in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." Taylor v. Comm'r of SSA, 659 F.3d 1228, 1232 (9th Cir. 2011) (citing Ramirez v. Shalala, 8 F.3d 1449, 1451-54 (9th Cir. 1993)). The Ninth Circuit did not require a finding that plaintiff had good cause for failing to produce the new evidence previously when concluding that the new evidence considered by the Appeals Council should be considered on appeal of the agency's final decision subject to judicial review. See Ramirez, supra, 8 F.3d at 1451-54; see also Taylor, supra, 659 F.3d at 1232.

On April 22, 2010, Dr. Nguyen signed a statement under penalty of perjury (see Tr. 622-24). Dr. Nguyen indicated that he had been treating plaintiff for a number of years and that plaintiff's Crohn's disease was "one of the most severe cases of Crohn's disease that I have seen in my practice" (Tr. 623). Dr. Nguyen opined that for "a number of years [plaintiff] has required close access to a bathroom and a need for frequent bathroom breaks as a result of this condition" (Tr. 623-24). He indicated his opinion that plaintiff had required these accommodations "since at least March, 2007, and probably for several years prior to that date" (Tr. 624). Dr. Nguyen indicated his "opinion that plaintiff had been "unable to maintain a regular work schedule because of the severity and chronicity of his symptoms since March, 2007 (id.).

The ALJ also failed to credit fully the opinion by State agency medical physicians that plaintiff required "frequent bathroom breaks" due to his Crohn's disease (Tr. 29, 329, 335, 337). The ALJ discounted this opined limitation because the ALJ found that the limitation was "inconsistent with treatment records, which do not show such reports by the claimant" (Tr. 29). First, for the reasons discussed, the Court concludes that the ALJ's finding that treatment records do not show reports of frequent bathroom breaks is not supported by substantial evidence in the record as a whole (see, e.g., Tr. 509 ("the diarrhea which goes up to 19 times per day")).

In addition, the ALJ appears to be substituting her own interpretation of the medical records, which were reviewed by the State agency consulting physicians, over the interpretation of the records by the medical doctors (see Tr. 29, 329, 335, 337). However, an ALJ must explain why her own interpretations, rather than those of the doctors, are correct. See Reddick, supra, 157 F.3d at 725 (citing Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). Here, the ALJ failed to explain adequately why her interpretation of the medical record regarding plaintiff's need for frequent bathroom breaks was correct over the interpretation by the medical doctors. See Reddick, supra, 157 F.3d at 725.

The ALJ committed other errors in reviewing plaintiff's credibility. The ALJ found that plaintiff's presentation and demeanor at the hearing were inconsistent with his testimony (Tr. 27). The ALJ found that plaintiff's alleged limitations of being unable to sit for more than an hour and requiring frequent bathroom breaks were inconsistent with the ALJ's observation that plaintiff "did not appear to be in any discomfort during the

hearing . . . . appeared quite jovial and he was able to sit for an hour at the hearing before needing a bathroom break" (Tr. 27-28). First, the Court notes that the ALJ's observations of plaintiff's behavior at the hearing do not appear to contradict his testimony as plaintiff did not sit for more than an hour and required a bathroom break more often than is accommodated by a 8-hour work schedule with a lunch and two breaks. Second, an ALJ's reliance on her personal observations of a claimant at the administrative hearing "has been condemned as 'sit and squirm' jurisprudence." Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted).

The ALJ also erred in her consideration of plaintiff's activities of daily living (Tr. 27). The ALJ included the following discussion in her written decision:

> The claimant's daily functioning and other reported activities are inconsistent with his allegations of more limiting symptoms. For example, the claimant said that he does the vacuuming, cleaning, and dishes. He also said that he spends time on Ebay selling items and that he has clients that he helps with their computers. Additionally, the claimant said that he likes to read computer magazines and work on computers (internal citation to Exhibit 7F). The claimant also indicated that he spends about 6 hours on the computer looking for work (internal citation to Exhibit 3E). Further, the claimant testified that he traveled on multiple occasions by train to visit his father. Such a range of activities strongly suggests that the claimant is capable of performing sedentary work as found in this decision.

(Tr. 27).

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from h[is] credibility as to h[is] overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (*quoting* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.

2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony; and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." Orn, supra, 495 F.3d at 639 (*citing* Fair, supra, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.'" Orn, supra, 495 F.3d at 639 (*quoting* Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ did not make any specific finding relating to plaintiff's daily activities and their transferability to a work environment. See Orn, supra, 495 F.3d at 639. In addition, the ALJ did not specify any particular testimony that was contradicted by plaintiff's activities of daily living. See id. Instead, the ALJ found that activities such as housework, working on the computer and traveling, to be inconsistent with unspecified allegations of more limiting symptoms (Tr. 27). Because the ALJ does not specify any testimony or specific alleged limitation that was contradicted by the daily activities cited, this factor was not relied on properly to discount plaintiff's testimony regarding his symptoms. See Orn, supra, 495 F.3d at 639. For example, it does not appear that any of the specified activities necessarily requires that plaintiff sit for more than an hour at a time or not have frequent access to a bathroom.

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ erred in her review of plaintiff's credibility and testimony regarding his limitations. Therefore, this matter should be reversed and remanded to the Commissioner

for further administrative proceedings. Plaintiff's credibility and testimony should be assessed anew following remand. In addition, for the reasons already discussed, the opinions of the State agency consulting physicians also should be assessed anew following remand.

2. The ALJ erred in her review of the lay testimony.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. § 404.1513(a), (d)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Van Nguyen, supra, 100 F.3d at 1467). In this recent

Ninth Circuit case, the court noted that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." Bruce, 557 F.3d at 1116 (*citing* Smolen, supra, 80 F.3d at 1289).

Here, the ALJ included the following discussion regarding the lay testimony offered by plaintiff's wife, Ms. Lisa Marie Fingler Vincent ("Ms. Vincent"):

> At the hearing, the claimant's wife testified that the claimant has daily pain and that his condition has worsened in the last 18 months. While the wife's testimony may reflect her personal observations of the claimant to some degree, the lack of corroborating objective medical evidence along with the sporadic mention of symptoms by the claimant since the alleged onset date renders her testimony less persuasive. Less weight is accorded.

(Tr. 29; see also Tr. 76-87).

First, the Court already has concluded that the ALJ's finding that there "is only sporadic mention of abdominal pain and diarrhea" in the record (Tr. 26) is not a finding that is supported by substantial evidence in the record as a whole, see supra, section 1. However, the ALJ relied on "sporadic mention of symptoms by the claimant since the alleged onset date" to find the testimony by plaintiff's wife less persuasive and afford it less weight (see Tr. 29).

Second, although an ALJ may not discredit "lay testimony as not supported by medical evidence in the record," the ALJ relied on a "lack of corroborating objective medical evidence" (Tr. 29) to find Mrs. Vincent's testimony less persuasive and afford it less weight. See Bruce, supra, 557 F.3d at 1116. This was legal error. See id.

Finally, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless

unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Stout</u>, <u>supra</u>, 454 F.3d at 1056 (reviewing cases). For the reasons discussed and based on the relevant record, the Court cannot conclude that the ALJ's error in her review of the lay testimony was harmless. <u>See</u> <u>id.</u>

3. <u>The medical evidence provided by Dr. Dan Neims, Ph.D. ("Dr. Neims") should be assessed anew following remand of this matter</u>.

The ALJ found that Dr. Neims "likely relied heavily on the claimant's self-report of which there are significant credibility concerns" and gave less weight to Dr. Neims's opinion in part for this reason (<u>see</u> Tr. 29). However, the Court has concluded that the ALJ erred in her review of plaintiff's credibility and that plaintiff's credibility should be assessed anew following remand. For this reason and based on the relevant record, the Court concludes that Dr. Neims' opinions should be assessed anew following remand of this matter.

4. <u>The question of whether or not plaintiff's impairments met or equaled a Listed Impairment should be assessed anew following remand of this matter</u>.

Defendant correctly argues that plaintiff failed to provide any specificity regarding plaintiff's argument that he met or equaled a Listed Impairment. Plaintiff failed to reply to this argument. However, due to the errors by the ALJ already discussed, this issue should be evaluated anew following remand of this matter.

5. <u>All of the steps in the sequential disability evaluation process must be assessed anew following remand of this matter</u>.

Plaintiff complains that the hypothetical presented by the ALJ to the Vocational Expert at plaintiff's hearing did not contain all of plaintiff's limitations, including the need for frequent access to a bathroom. Plaintiff also argues that the ALJ failed to consider plaintiff's side effects from his medications, committing legal error.

The Court already has concluded that the ALJ erred in her evaluation of plaintiff's alleged limitation regarding need for frequent bathroom access. In addition, medication side effects should have been considered explicitly when plaintiff's residual functional capacity was determined. See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). For these reasons, the reasons already discussed, and the relevant record, the Court concludes that all of the five steps of the sequential disability evaluation process should be evaluated anew following remand of this matter. See 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4); Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

CONCLUSION

The ALJ failed to evaluate properly all of plaintiff's functional limitations and erred in her consideration of plaintiff's credibility as well the lay testimony. Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

purposes of de novo review by the district judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

matter for consideration on February 24, 2012, as noted in the caption.

Dated this 2nd day of February, 2012.


J. Richard Creatura
United States Magistrate Judge